IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

CARMEN VALERIA,

    Plaintiff,

vs.                                CASE NO. CV-03-J-905-NE

THE BOEING COMPANY EMPLOYEE
HEALTH AND WELFARE BENEFIT
PLANT, et al.,

    Defendants.

## MEMORANDUM OPINION

Currently pending before the court is the defendants' motion for summary judgment (doc. 16), evidence in support of said motion and memorandum of law. The plaintiff filed evidence and a memorandum in opposition to said motion. The court having considered the pleadings, evidence and memoranda of the parties, finds as follows:

The plaintiff filed the complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that the defendants wrongfully terminated her short term disability benefits, in violation of 29 U.S.C. § 1132(a)(1)(B). Upon consideration of the pleadings, memorandum and evidentiary submissions received, the court concludes that the motion for summary judgment is due to be granted as no genuine issues of material fact remain and the defendants are entitled to judgment in their favor as a matter of law.

## FACTUAL BACKGROUND

Plaintiff was employed by defendant Boeing. She was diagnosed with Multiple Sclerosis ("MS") and optic neuritis, and her doctor submitted these diagnoses and the plaintiff's limitations to defendant Aetna, who is defendant Boeing's claims administrator for its short term disability plan. Plaintiff initially received short term disability benefits. AET190-191. She was then told her benefits would terminate unless she provided more information. AET186, AET189. While her doctor was slow in providing it to Aetna, his opinion was that she remained disabled. After receiving the additional information, Aetna upheld its decision the plaintiff was not disabled. AET 137. The plaintiff then appealed the decision to Aetna and submitted further evidence. AET193. Based on the report of one of Aetna's consulting disability medical directors, Dr. Oyebode A. Taiwo, the original termination of short term disability benefits was upheld, based on his determination that the medical records provided did not support the diagnosis of progressive MS and the lack of evidence that she could not perform her job. AET94, AET96-97.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment

2

always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e). In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

The sole issue before the court is whether the factual findings of the plan administrator are correct. The defendants argue the evidence submitted by the plaintiff was not sufficient to support a finding of disability. The plaintiff argues that she provided the very type of evidence the defendants claimed they needed.

As the plan administrator does not control the funds for benefits, there is no conflict of interest and an "arbitrary and capricious" standard of review is used. *See Turner v. Delta Family-Care Disability and Survivorship Plan*, 291 F.3d 1270, 1273 (11th Cir.2002). This standard is appropriate when the plan documents grant the claims administrator discretion to interpret disputed items. The parties do not dispute that this is the appropriate standard of review.

3

Next, the court must determine, *de novo*, whether the plan administrator's decision was "wrong." *HCA Health Systems v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir.2001). If the decision is wrong but reasonable, the court must still uphold the administrator's decision because of discretion granted the administrator. Because it is an arbitrary and capricious review, the court is limited to the evidence before the administrator at the time of the decision.

The plaintiff argues the defendants' decision to use non-examining physicians to refute the opinions of plaintiff's treating doctors was arbitrary and capricious.[1] Additionally, the plaintiff argues that the non-examining consultative doctor, Dr. Taiwo, focused on lack of objective evidence, although the plaintiff did submit an abnormal result from one of the tests he stated was needed.[2] The plaintiff further argues that some of the symptoms of MS, namely pain and fatigue, are not capable of objective measurement. The plaintiff's treating doctors note multiple complaints of pain and fatigue.

The defendants assert the plaintiff's benefits were terminated based on evidence her vision improved. The defendants do not dispute that the plaintiff suffers from MS, but rather state that they have no evidence that her condition prevents her from performing her job. AET138.

---

[1]The plaintiff's treating neurologist, Dr. Richard P. Hull, clearly believes the plaintiff is unable to work.

[2]This is an abnormal visual evoked response test (VER) conducted on June 1, 2001. AET131.

The plaintiff argues that the plan administrator should not have adopted its consultants opinions over the plaintiff's treating physicians, relying on Social Security cases.  However, in *Black & Decker Disability Plan v. Nord*, the United States Supreme Court stated that plan administrators do not have to accord special deference to the opinion of treating physicians in ERISA cases.  538 U.S. 822, 123 S.Ct. 1965, 1967 (2003).  The Court noted that "ERISA ... require[s] 'full and fair' assessment of claims and clear communication to the claimant of the 'specific reasons' for benefit denials.  See 29 U.S.C. § 1133; 29 CFR § 2560.503-1 (2002).  But these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's condition." *Black & Decker Disability Plan,* 538 U.S. at – , 123 S.Ct. at 1967.

Given the evidence before the administrator at the time of the decision, the court does not find that the decision to terminate short term disability benefits was arbitrary and capricious.  The plaintiff was paid benefits beginning June 8, 2001. AET190.  This was based, in part, on Dr. Hull's provisional diagnosis of MS pending an exam on July 6, 2001.  AET192.  The plaintiff was paid benefits through August 30, 2001.  AET186.  She was notified in July, 2001 that Dr. Hull had failed to provide medical records dated after 1999.  AET189.

May, 2001 records note the plaintiff had blurry vision, possible optic neuritis and needed an MRI.  Def. Ex. 2 at AET115, AET118.  A CAT scan was normal. AET118.  An attending physician's statement was completed by Dr. Hull in July,

5

2001. AET 187. In that, Dr. Hull stated that the plaintiff has MS and optic neuritis and suffered from blurred vision, right eye pain and fatigue. *Id.* He noted she had severe limitations of functional capacity and was incapable of sedentary activity. AET 188. Dr. Hull wrote to Aetna on October 25, 2001 to state that the plaintiff was diagnosed with MS in September, 2001 after an abnormal visual evoked response test (VER). AET 129. He stated she is unable to carry out her normal employment activities due to decreased visual acuity and fatigue. *Id.* He also noted problems with prolonged ambulation due to weakness in her knees. *Id.* Dr. Hull concluded by asking defendants to contact him if more information or clarification was needed. AET 130. Dr. Hull also completed an "Attending Physician's Statement" which was received by Aetna on October 4, 2001. In that, he states she has MS, with the subjective symptoms of weakness in her right leg and decreased visual acuity. AET 140. He noted she was stabilized and ambulatory, had moderate limitations and could not engage in "close work" because of her visual problems. AET 141.

Plaintiff's eye doctor, Dr. Charles Woods, noted in November, 2001, that the plaintiff complained of pain behind her eye when reading or working on a computer. AET 120, AET 123-124. A note on the November 1, 2001 record shows that the plaintiff had a VER for multiple sclerosis after being diagnosed with it on June 1, 2001. AET 124. A November 30, 2001 letter from Dr. Angela Lewis to the Dr. Woods states that the plaintiff had "an episode of optic neuritis in her right eye in June, 2001." AET 100. The plaintiff reported to Dr. Lewis that her vision has since

6

improved greatly, and she has no eye pain sitting around the house, driving or watching TV." *Id.* In a December 3, 2001 letter to Aetna, plaintiff states she suffers from extreme fatigue and weakness in her legs, that she can only do minor things around her house and must nap often during the day. AET193. She states she is trying to "get strong again" so that she can return to work. AET193. Medical records dated December 11, 2001 show the plaintiff has 20/20 vision. AET099. She was told to wear progressive lens and use artificial tears before reading or working on the computer. *Id.* Her diagnosis was "optic neuritis, MS, HTN." *Id.*

The claims file was reviewed by Dr. Brent Burton on October 16, 2001. AET142. He found no visual acuity test to support the impairment claimed. AET 142. An MRI from 1996 was submitted to Aetna, which was a normal and did not show evidence of MS. AET149. However, at that time, Dr. Hull opined that the poor quality of the images may have kept him from seeing an MS plaque. AET150-151. An MRI in October, 1999, was again normal. AET153.

The case review by Dr. Taiwo dated April 1, 2002 concluded that her records do not support a diagnosis of progressive MS. AET97. Defendants' records reflect that the plaintiff's benefit termination and denial on appeal were based on the medical information not showing continuous treatment and the medical information did not substantiate an inability to perform her usual job.[3] AET234.

---

[3]Under the plan in question, disability is defined as the inability "to perform the material duties of your own occupation." AET24, AET 50. Plan documents also state that

7

Given the defendants' finding that further substantiation was needed, but never obtained, the court concludes that the administrator's decision to terminate short term benefits was reasonable, and hence not arbitrary and capricious.[4]

In consideration of the foregoing, the court shall grant the defendants' motion for summary judgment by separate Order.

**DONE** this the _____ 6 _____ day of <u>January</u>, 2004.

INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE

---

"determinations of total disability are made by the service representative within the terms of its contract with the Company." AET 50.

[4]The plaintiff also argues that the plan administrator failed to review the claim in a timely manner. Thus, the plaintiff asserts, the medical reviewer's report should not be considered because it was not in the file on the date the claim should be deemed denied. The case plaintiff relies on for this does not support this interpretation of ERISA. Even if the same was a correct statement of law, the plaintiff does not assert how this harmed her. She does not argue that, but for that report, her claim would have been approved.